**Dated: April 12, 2010**
**The following is SO ORDERED:**

_____
George W. Emerson, Jr.
**UNITED STATES BANKRUPTCY JUDGE**

_____


UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| In re | |
| VML COMPANY, LLC | Case No. 09-24507 |
| | Chapter 11 |
| Debtor. | |
| | |
| THE COMMITTEE OF UNSECURED CREDITORS, | |
| Plaintiff. | |
| v. | Adv. Pro. No. 09-00299 |
| REGIONS BANK, N.A., | |
| Defendant. | |

**MEMORANDUM OPINION ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter comes before the Court on the Motion for Summary Judgment filed by Regions Bank, N.A. ("Regions"), the defendant in this Adversary Proceeding and the Cross Motion for Summary Judgment brought by the Committee of Unsecured Creditors

- 1 -

(the "Committee") appointed in the Chapter 11 case of VML Company, LLC ("VML" or "Debtor") by the United States Trustee as reflected by Notice entered on the Court's docket on May 26, 2009. This proceeding arises in a case referred to this Court by the Standing Order of Reference and is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

VML, LLC filed its voluntary petition under Chapter 11 of the Bankruptcy Code on April 24, 2009. On May 19, 2009 a Final Order was entered authorizing the Debtor to obtain post-petition financing as well as providing for the Debtor's the use of cash collateral. Pursuant to this Final Order, Regions agreed to provide post-petition financing to the Debtor in accordance with the terms set forth therein. One of the provisions of the Final Order provided for a thirty-day deadline for any party other than the Debtor to file any complaint challenging the extent, priority, validity or perfection of the pre-petition credit arrangement between the Debtor and Regions as memorialized by the Amended and Restated Loan and Security Agreement ("Security Agreement") dated July 22, 2005.

On May 26, 2009, subsequent to the entry of the Final Order, the United States Trustee filed its Notice of Appointment of Committee of Unsecured Creditors. The Committee, on May 28, 2009, filed a motion to set aside the Final Order and on May 29, 2009 filed a Notice of Appeal seeking appellate review of the Final Order. Ultimately, the Committee's opposition to the Final Order was resolved via Consent Order which modified the Final Order to provide the Committee with an extension of the Final Order's deadline for filing complaint through June 26, 2009. The instant Adversary Proceeding was filed on June 26, 2009.

Regions filed a Motion to Dismiss this adversary proceeding pursuant to Fed. Rule Bankr. P. 7012(b), to which the Committee responded. At the pre-trial conference on Regions' Motion to Dismiss the parties agreed that the Court would need to examine matters outside the pleadings including the underlying documents which memorialized the secured transaction between the Debtor and Regions. Upon consideration of the additional documents, the Plaintiff's motion to dismiss is converted to a motion for summary judgment. *Hildebrand v. Board of Trustees of Michigan State University,* 607 F.2d 705, 709 (6th Cir. 1979), cert. denied, 456 U.S. 910, 102 S.Ct. 1760 (1982). The Court gave the parties the opportunity to provide additional briefs or pertinent materials in accordance with Fed. R. Bankr. P. 7012(d). Prior to the hearing on March 11, 2010, the Committee filed a Supplemental Response and the parties together filed a Joint Stipulation setting forth the following relevant facts:

1. On or about April 30, 2001, and in consideration of certain loans made to VML by AmSouth Bank (predecessor-in-interest to Regions) VML and Regions entered into a Loan and Security Agreement that later became the Amended and Restated Loan Security Agreement dated July 22, 2005 (collectively, the "Security Agreement").

2. Pursuant to Paragraph 4.A. of the Security Agreement, VML granted Regions:

> a security interest in and to all Accounts, Inventory and General Intangibles of Borrower [VML], as well as all machinery and equipment of Borrower [VML] whether now in existence or owned or hereafter acquired, entered into, created and arising, and wherever located, together with all proceeds and products thereof and all accessories thereto, and all books, records, files and all other data and documents of all kinds relating thereto, in

    whatever form, whether computerized or otherwise including but not limited to, computer discs and tapes relating to all of the foregoing.

3. Regions filed an initial financing statement, Filing No. J31459 with the Shelby County Register's Office ("SCRO") on May 4, 2001. Regions continued this financing statement by filing a continuation statement, Filing No. 05188584 with the SCRO on November 16, 2005. The initial financing statement, Filing No. J31459, reads:

    This Financing Statement covers the following types (or items) of property: The Property described on Exhibit "A" attached hereto and located at:
     1. 2070 Channel Ave., Memphis, TN 38133
     2. 5388-5398 Airways Blvd., Memphis, TN 38190

    Exhibit "A" to the financing statement states:

    (a) All right, title and interest of Borrower in and to all tangible personal property now owned or hereafter acquired by Borrower and now or at any time hereafter located on or at the Property, including, but not limited to: all materials stored on the Property, goods, machinery, tools, equipment, furniture, supplies, raw materials, work in progress, inventory and motorized vehicles.

    (b) All of Borrower's interest in all existing and future accounts, contract rights, general intangibles, files, books of account, agreements, permits, licenses and certificates: and

    (c) Insurance proceeds of above property.

4. Regions also filed an initial financing statement, Filing No. 201062299 with the Tennessee Secretary of State ("TN SOS") on May 11, 2001, and continued this financing statement by filing a continuation statement, Filing No. 305067018, with the TN SOS on November 14, 2005.

5. Regions filed an initial financing statement, Filing No. 20022509622, with the Delaware Secretary of State on September 30, 2002. Regions continued this initial financing statement by filing a continuation, Filing No. 20071296226, with the Delaware Secretary of State on April 6, 2007. Except for the one additional statement, the property descriptions included in the initial Delaware financing statement, Filing No. 20022509622, are identical to the descriptions included in the initial financing statement, Filing No. J31459, filed with the SCRO on May 4, 2001. The additional statement is: "This same collateral covered a financing statement filed in the office of the Shelby County, Tennessee on May 4, 2001, file No. J31459. This financing statement remains effective."

6. On June 30, 2006, Regions filed a financing statement, Filing No. 20062283653, with the Delaware Secretary of State which reads: "This financing statement is an 'in lieu of continuation' for the following statements. UCC SOS TN 201062299 05/11/2001."

At the hearing on the parties' cross-motions for summary judgment, the parties agreed to further stipulate to the following:

7. On May 4, 2001, when the initial financing statement, Filing No. J31459, was filed, all of the Debtor's personal property was located at either 2070 Channel Ave., Memphis, TN 38133 or 5388-5398 Airways Blvd., Memphis, TN 38190. Subsequently, the property was moved to a third location.

  8. Summary judgment is appropriate in this case because there are no genuine issues as to any of the facts which are material to the outcome of this case.

This Court should render judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) as made applicable in adversary proceedings pursuant to Fed. R. Bankr. P. 7056. "[T]he filing of cross-motions for summary judgment does not necessarily mean that the...court is free to treat the case as if it was submitted for final resolution on a stipulated record." *B.F. Goodrich Co. v. U. S. Filter Corp.,* 245 F.3d 587, 592 (6th Cir. 2001)(citation omitted). This means the court must "independently assess each motion 'on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Panetta v. Sondergeld (In re Sondergeld),* 327 B.R. 313, 316 (Bankr. E.D. Mich. 2005)(citation omitted).

Because the only remaining issue in this case is a legal issue, summary judgment is appropriate. "When evidence is incomplete or disputed, the matter should not be disposed of summarily, but instead should be left for determination by the trier of fact. However, where only an application of legal principles to undisputed facts gives rise to a question of law it may be decided by the court." *Choate v. Landis Tool Co.* 486 F. Supp. 774, 775 (E.D. Mich. 1980), citing *Sove v. Smith,* 355 F.2d 264 (6th Cir. 1966). There are no disputes in this case as to the underlying facts. The only issue for determination

concerns the sufficiency of the collateral description in Defendant's initial financing statement, Filing No. J31459.

At the hearing, counsel for both parties agreed that the sole issue before the Court is whether the language of the initial financing statement limits the extent to which Regions' claim in the described collateral is perfected, as argued by the Committee, or if the language is sufficient to perfect an interest in the Debtor's collateral wherever it is located, as Regions suggests.

The first statutory provision at issue, T.C.A. § 47-9-502, explains the requirements for a sufficient financing statement. "[A] financing statement is sufficient only if it: (1) provides the name of the debtor; (2) provides the name of the secured party or a representative of the secured party; and (3) indicates the collateral covered by the financing statement."

T.C.A. § 47-9-504 adopts T.C.A. § 47-9-108 as the standard for adequacy of the collateral description in a financing statement other than one covering "all assets" or "all personal property." T.C.A. § 47-9-108 states that a description of personal or real property is sufficient if it "reasonably identifies what is described." That section then goes on to provide a helpful though non-exclusive list of examples of ways by which collateral may be reasonably identified: "(1) specific listing; (2) category; (3) ...a type of collateral defined in the Uniform Commercial Code; (4) quantity; (5) computational or allocational formula or procedure; or (6) ...any other method, if the identity of the collateral is objectively determinable."

The comments to T.C.A. § 47-9-504 explain the policy for conditioning perfection upon the proper filing of a financing statement: to "provide notice that a

person may have a security interest in the property claimed." T.C.A. § 47-9-504 Comment 2.

Additionally, T.C.A. § 47-9-506 provides that "A financing statement substantially satisfying the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading." This section, formerly T.C.A. § 47-9-402(8) has been explained in this way:

> "[M]inor mistakes in financing statements are not fatal because Article 9 of the Uniform Commercial Code was intended to provide merely a system of notice filing. The financing statement was designed to be a statement filed publicly which would alert credit searchers that a certain security agreement may exist. Thus, even though there may be errors or deficiencies in description, addresses, names and even signatures, such errors will not destroy the effectiveness of a financing statement so long as they do not frustrate the underlying purpose of the filing requirements in affording notice to creditors of the possible existence of security interests."

*C & J Leasing Corp. v. Waldschmidt (In re Goolsby),* 284 B.R. 638 (M.D. Tenn. 2002), citing *Brown v. Belarus Machinery, Inc.*, 83 B.R. 515, 517 (Bankr. E.D. Tenn. 1988)(citations omitted).

Whether an error in a financing statement is seriously misleading, and thus whether T.C.A. § 47-9-506 "saves a defective UCC-1 is a question of fact to be determined by the trial court." *Goolsby,* citing *Lankford v. U.S.,* 1991 WL 185224 (M.D. Tenn. 1991). Here, both parties agree that the financing statement did not include the Debtor's location at 384 E. Brooks Road, Memphis, TN 38109, along with the other two addresses listed as locations for the Debtor's property. At the time the financing

- 8 -

statement was filed, all of the Debtor's property was located at one or the other of the two specified addresses. At some later point in time the collateral was moved to the Debtor's Brooks Road location.

The descriptive language used in the financing statement at issue is "This Financing Statement covers the following types (or items) of property: The Property described on Exhibit "A" attached hereto and located at:

    1.    2070 Channel Ave., Memphis, TN 38133

    2.    5388-5398 Airways Blvd., Memphis, TN 38190

Exhibit "A" to the financing statement states:

(a)    All right, title and interest of Borrower in and to all tangible personal property now owned or hereafter acquired by Borrower and now or at any time hereafter located on or at the Property, including, but not limited to: all materials stored on the Property, goods, machinery, tools, equipment, furniture, supplies, raw materials, work in progress, inventory and motorized vehicles."

The language used in the financing statement in question described the collateral, by type, at the time the security interest was taken. There is no question that the financing statement was intended to cover tangible personal property. The question for the Court is whether the language limited the security interest to only the collateral found in those locations. "By design or otherwise, a security agreement may limit the security interest to moveable collateral only so long as it is kept at one location." *People's Bank of Elk Valley v. Murfreesboro Production Credit Association (In re Lee),* 14 B.R. 804, 805 (Bankr. E.D. Tenn. 1981). However, "[a] location may be part of the description

without making the security interest depend on the [collateral] remaining at that location." *Id.* at 806.

The Security Agreement which created the security interest reflects that the parties' intention was for the Debtor to grant to Regions a security interest "in and to all Accounts, Inventory and General Intangibles of the Borrower, as well as all machinery and equipment of Borrower whether now in existence or owned or hereafter acquired, entered into, created or arising, and wherever located, together with all proceeds and products thereof and all accessories thereto..." *Notice of Joint Stipulation, Ex. A, p.9, ¶4A.* At the hearing on the cross-motions for summary judgment, counsel for the Committee admitted that the existence of Regions' security interest was not being contested, only its perfection.

The Court finds that, as stated by counsel for the Committee, pursuant to the Security Agreement, Regions has a security interest in all property of the Debtor, wherever located. The Court further finds that, as stipulated by the parties, at the time that Regions filed its initial financing statement, Filing No. J31459, with the Shelby County Register's Office, its security interest in and to all property of the Debtor was perfected because the collateral in question was, in fact, located at the two specified locations.

Plaintiff here urges the Court to follow cases finding that a specific address referenced in a financing statement will serve to limit perfection of the security interest to the collateral located at those addresses. This Court, however, is faced with a factual scenario that is different from cases, including those cited by the Defendant, where the language in the financing statement limits perfection and mirrors the limiting language of

- 10 -

the underlying security agreement. *See Lankford v. U.S.,* 1991 WL 185224 (M.D. Tenn. 1991); *Selby v. England (In re California Pump & Manufacturing Co., Inc.),* 588 F.2d 717 (9th Cir. 1978). In situations where the language of the financing statement and security agreement are identical, any creditor who looked at both documents and found identical restrictive language would reasonably assume that the security interest was so limited. Absent conflicting language in the two documents there would be no way for the creditor to know that there was a potential for the security interest to extend beyond the referenced locations, no matter how diligently the creditor might search.

In the case *sub judice*, a reasonable creditor conducting a query under the Debtor's name would find financing statement No. J31459. "As explained in the Official Comments [to T.C.A. 47-9-503(c)]...[f]inancing statements are indexed under the name of the debtor, and those who wish to find financing statements search under the Debtor's name." *First Cmty. Bank of E. Tennessee v. Jones (In re Silver Dollar, LLC),* 388 B.R. 317 (Bankr. E.D. Tenn. 2008). Neither the identification of the Debtor or secured creditor as set forth on the financing statement are problematic here.

A hypothetical creditor searching for prior-filed financing statements under the Debtor's name and finding financing statement No. J31459 would be on notice that Regions had a security interest in the Debtor's collateral. The language "All right, title and interest of Borrower in and to all tangible personal property now owned or hereafter acquired by Borrower and now or at any time hereafter located on or at the Property," indicates that the parties intended that the collateral might be owned by the Debtor now or some time in the future, and might be located on the Property now or some time in the future. The language indicates, if anything, that the collateral and its future ownership

- 11 -

and location could be in flux and yet the parties intended that the collateral still serve as security for the underlying obligation.

A reasonable creditor would have been provided with notice that Regions had a security interest in personal property of the Debtor. Exactly where and to what extent the collateral might be unsecured would require further investigation. A reasonable creditor, armed with the knowledge that Debtor had encumbered personal property, would then seek out the extent of the prior security interest as memorialized by the Security Agreement. Such inquiry would result in the discovery of the full and complete extent of Regions' security interest.

The Court finds that the Initial Financing Statement, Filing No. J31459, would afford notice to creditors and third parties of the possible existence of Regions' security interest and was effective to perfect Regions' security interest in the collateral as evidenced by the Security Agreement.

While not referenced by the parties in either pleadings or arguments to the Court, T.C.A. § 47-9-507(b) states "Except as otherwise provided in subsection (c) [applicable to a name change on the part of the Debtor] and § 47-9-508 [applicable to a new debtor acquiring rights in the collateral], a financing statement is not rendered ineffective if, after the financing statement is filed, the information provided in the financing statement becomes seriously misleading under § 47-9-506 [set forth above]."

The parties have stipulated that all of the Debtor's property was at the two referenced addresses at the time of the filing of the financing statement, and thus, the financing statement was effective to perfect Regions' security interest at that time. Even if the Court were to find that the financing statement became seriously misleading when

- 13 -

some or all of the collateral was moved to the Debtor's location at 384 E. Brooks Road, T.C.A. § 47-9-507 would prevent it from being rendered ineffective. Because the Court has found that the financing statement was not seriously misleading even when the collateral was located at the unreferenced Brooks Road location, T.C.A. § 47-9-507 does not enter into the Court's analysis.

For the above reasons, the Motion for Summary Judgment filed by Regions Bank is hereby GRANTED. The Cross Motion for Summary Judgment filed by the Unsecured Creditors Committee is DENIED.

The Court will enter separate orders consistent with this Opinion.